that have not previously been addressed either by you or your opponent. So we call the first case of the day and that's United States v. Aguilar and Ms. Madowell, we'll hear from you representing Mr. Aguilar. I'm Judy Madowell on behalf of Juan Aguilar. Mr. Aguilar was charged with sexual abuse of award. He pleaded not guilty. He was tried before a jury and was convicted. The issue on record by denying Mr. Aguilar the opportunity to exercise all of his preemptory challenges. The defendant was given 12 preemptory challenges. The government was given 8. The district court gave, followed rule 24B in allotting 10 preemptories to the defendant and 6 to the government. And then because the court was selecting alternate jurors, gave additional rule 24C required 1 additional preemptory challenge per side. The court here actually gave 2. That led to the total of 12 for the defendant, 8 for the government. The court gave 5 minutes to exercise the preemptory challenges. Were the alternate jurors ever used in the case? No, they were not. They were excused at the end of the evidence. The district court gave 5 minutes for the parties to exercise the preemptory challenges. That was sufficient time for the government to exercise all 8 of its. It was not sufficient time for the defendant to exercise all of its preemptory, all of his preemptory challenges and he objected to the inability to be able to complete his Why was it not time enough for him? That is correct, Your Honor. I said why? Oh, I'm sorry. It was, this was a very lengthy board hire. It was actually 134 pages for the type of case. It was 134 pages of the transcript. How long did it last? You know, I don't actually know the amount of time because the transcripts, at least these, don't show time on them. The old transcripts used to show time, but these didn't show any type of time. There were, I'm guessing there were 6 Steven Yearman called in. This court allowed, the court did general board hire, but then he also allowed the board hire. They actually questioned individual jurors. There were two questions in particular that brought out a lot of response from the potential jurors. One had to do with whether a juror or anyone they knew had been either accused of sexual assault or the victim of sexual assault. That resulted in 13 jurors, potential jurors, raising their hands and then individual questioning in private of those jurors. That actually resulted in, I believe, the granted challenge for cause of five of the jurors. The other question had to do with homosexual acts and jurors' feelings regarding sexual relations between men. That resulted in 18 of the potential jurors indicating that they held very strong beliefs based on religious and moral grounds that this was wrong. Six of those potential jurors indicated they could not be fair and they were also stricken for cause. It was a very active, it was actually more the type of board hire you tend to see in state court than you tend to see in federal court. It was a very active board hire, a lot of information out there, and a lot of the information that came out the purpose behind preemptory challenges is for the parties to be able to strike jurors who they believe are going to be biased against their position, but there's not enough evidence there to show challenge for cause. Do we know how long they had to do their strike sheet? The court, we're not exactly certain. Ten minutes? Five minutes? What the record indicates, it was somewhere between five and eight. I couldn't tell from the briefing whether it was five or ten minutes, but somewhere around there. The court initially said five or six minutes and then said to the jurors, be back in five. Then I believe at some point defense counsel said that they were given as much as eight. That's the time we're looking at. It was sufficient for defense counsel to be able to complete nine of the challenges, but not all twelve. The issue is preserved for appeal. I know there's a dispute regarding that, but when the courtroom deputy came in and read off the list of jurors, the court asked if there were any objections, and defense counsel said that she objected to not being able to complete our list, Your Honor. We do object to that. We were working as hard as we could. The court noted that, overruled it, and then swore in the jury. Additionally, when defense counsel turned in her peremptory strike sheet . . . One of us, she says, we were working on our list. It is virtually explicit that the court knew he was talking about the preemptory list. That's the only list they were working on. That's the only one that was involved. All the challenges for cause had already been done. They were now down to the strike zone of one to forty-four potential jurors and they were working on their strike list. Whether they needed more time to think about it, to figure out what they wanted to do, the court says, well, I thought you mentioned you wanted more time to study it, or whether they actually mean complete the form, it's still the same process that you're doing at that point. I don't know that that's really any different, whether they're thinking about who do we want to strike or who are actually writing it down, the thought that they just had. It's the same process. That's actually a friendly question. Yes, I know it is. It is, as I said, given the length and complexity of this four dire and the number of responses from jurors that could have indicated a potential bias against the defendant's position, it was a more difficult process for the defendant to select the strikes than it was for the government. The first four people listed on the defendant's strike sheet were people that she actually challenged for cause that were denied. The remaining individual on the strike sheet, one of them had indicated that her niece had been sexually abused by a grandfather. There hadn't been a challenge for cause on it, but one can understand why defense counsel would challenge or would want to strike the person. Three of them had indicated that they had strong religious beliefs against homosexual acts, but they had indicated that they could be fair. The defense counsel was clearly working through the list, and she explained it to the court. She also was talking with the defendant regarding who he believed should be struck. In fact, this court has noted that that's one of the reasons why jury selection is considered a critical stage, is that the defendant actually be involved in the strike selection. Do we know whether or not the courtroom deputy failed to give the sheet to the judge once it had an actual objection on it, rather than just the list compiled? The strike sheet is in the record excerpt. It's Excerpt 3. Right, but we don't know whether the judge said he didn't see it, so we should believe that it's the courtroom deputy that failed to give . . . Once you write a written objection on your form, which is who you would give it to, that's kind of beyond the scope of the duties of the courtroom deputy, and it needs to be presented to the judge at that point. The defense counsel indicated that at the time she made her objection, there was nothing about the court's response that would have indicated that he was unaware of what she had written on her strike sheet. The strike sheet had three blanks on it, and she had written on it, we needed more time. And it was clear that counsel believed that the court was aware of it when she made the objection, because she started it something like, other than to not being able to complete our list, which would indicate that she believed the court was aware of the fact that she had written on the strike sheet, we needed more time. Okay, let's talk about whether Webster is still good law, and whether or not you have to show prejudice. I am going to concede that Webster is no longer good law. I believe that given the Supreme Court's decisions in Martinez-Salazar, Riviera v. Illinois, this court's understanding of that case and those cases in Sanchez-Hernandez, that we're no longer looking at automatic reversible error. In other words, it was no structural error, and it was no constitutional error. That is correct, Your Honor. So we go from a situation where this court and many other courts held that the denial of a preemptory strike was automatic reversible error, to now where we're under harmless error analysis. And the reason the courts said this was automatic reversible error was because of the nature of the error. For one thing, it goes to the composition of the jury, which then is present through the entire case. The other thing is, it's difficult, if not impossible, to show harm. That doesn't . . . Can you show harm here? If you conceded the . . . I appreciate your candor with the court, but I'm somewhat taken aback that since we don't have a case that exactly overrules it. So I'm wondering what the . . . Can you show harm? Well, Rule 52A says that harm is that the defendant's substantial rights have been affected. It doesn't say exactly how we determine that. There are two post-Martinez-Salazar cases in which this court looked at certain record facts to try and determine whether there was harm. I'm sorry, Your Honor. Do you have a question? No, I want you to finish your answer, but I did have a question. In one of them, the court said, does the record show that the defendant would have done something differently? And in the other one, the court said, does the record show that the value or weight of the preemptory strikes was diminished? And I'd like to analogize, if I could, to another type of error . . . Let me ask you. Yes. How many of these jurors that he is asserting now were alternate jurors? Well, that's . . . It's interesting because of the way the court directed the jury selection in this case. The four that . . . the three that defense counsel said she would have struck, 4, 10, and 14, would have actually been struck from the jury proper. And that's because the district court didn't actually follow Rule 24C, the Rule 24C says you're to follow when you're selecting alternate jurors and have preemptories for that. The court said, told the parties, the strike zone is up to Juror 44, and said that includes the alternates. So, when the parties turned in their strike sheets, the deputy, courtroom deputy, just went down in sequential order, striking off who they had struck, and then listed the jury in sequential order. So, you ended up with jurors 1 through 31 as the 14 jurors. And then, at the close of evidence before deliberation, the court excused the last two, which were numbers 30 and 31. So, 4, 10, and 14 would not have been on the jury . . . That is correct. . . according to counsel at trial? Yes. Yes. Because of the way the court set up the jury selection in this case. Is that an error that you're arguing, that that's some sort of structural error or something that didn't follow the normal process, that you have to do that separately, or is that not part of the briefs? We believe that it affected the defendant's substantial rights. We believe that even within harmless error, it affected the defendant's substantial rights. An analogy to that is allocution error. Let me just clarify what you said, and then you continue with what you said. But, you're saying that all three of the jurors that he names, or she names, would have sat, or did sit on the jury? Yes, they did. They did? Okay. Yes. Okay, go ahead. I'm sorry. And all three of them would not have sat on the jury had she been able to exercise the preemptory statute. And all three of them have some sort of special issue related to the subject matter of the case, right, or not? It is clear that juror number four, defense counsel, would have wanted to have bases for wanting to strike. He had been on a court martial involving rape. He was ex-military and also had law enforcement connection. It's a little bit less clear on jurors number 10 and 14. And, in fact, defense counsel said at one point when she was perfecting the record, she said to the court, I was moving as rapidly as I could. There may have been other jurors that I would have wished to have struck, but I wanted to get the three down to get my three strikes. Do you need only juror number four to show that it wasn't, that the error's not harmful? Yes, I believe we do, Your Honor. I think we only need juror number four. And, in terms of, and I'd like to make the allocution analogy, just because allocution is also, it's one of those, the defendant's right to allocate at sentencing is one of those errors that this court has held was automatic reversible error, structural error. It's not constitutional. It's by rule, just like preemptory strikes. Now, it's subject to harmless error analysis, though it's almost always plain error. And this court, when it reviews error in that context, the court looks at was the defendant sentenced to the top of the guideline range? Or, if he was sentenced to the bottom of the guideline range, did defense counsel request something below that range? And could it, can the defendant point to something in the record that he might have allocated about? So the court actually looks for record evidence to affect substantial rights. And I argue that this is the same type of error where the court can use, the court in fact has used a similar analysis in Garcia-Flores and in the Wilson case. And I am out of time. I'll give you another minute. Yes, Your Honor. So, I do believe that in this case, the defendant made it clear that she would have done something differently. She pointed out that she would have struck the three additional jurors that she was entitled to. Thank you for saying that. I thought you were going to continue the line that you were going. No, actually, Your Honor, I have nothing new to add. We will hear now from Ms. Friel, representing the United States. May it please the court. My name is Jennifer Friel and I represent the United States. I would like to begin with the question about how much time was actually provided for this process. And before the strike sheets were given out, the district court did say you've got five to seven minutes. But the following day, it was clear defense counsel said it was about twice that much. They had about ten minutes to do this. But what's more important is that they had all morning. That, as explained in the district court case from Philadelphia, we cite in our brief, the district judge there was talking about time limits, peremptory strikes, and he said, the hold or dire counsel is tasked with thinking, who do I want? Who do I want to strike for cause? This jury had been there since 7 in the morning and it was 1 p.m. in the afternoon. There was extensive questioning. Judge Rodriguez went out of his way to let counsel question individual venire panels. Doesn't that cut the other way because that means that there's a lot more information to assimilate and you have to be paying really close attention, assimilating a lot of information and then you're saying, well, you have to be able to make the decisions as you go. Ten minutes is extraordinarily short. If you sit down and just don't say anything for ten minutes, it's a pretty long time. I do think, Your Honor, you hit the nail on the head when you said this was more about deliberating than writing because I actually looked at the sheet and counted. We needed more time is actually more characters than 4, 10, and 14. I really think we're confusing the issue when we say they didn't have enough time to write the numbers out. I think this was about deliberating. There's nothing wrong with needing more time for deliberating once they bring that to the attention of the court. That's where I assert, Your Honor, that it wasn't brought to the attention of the court. I maintain, as stated in the brief, that it should be on plain error. We know that because the district court released the venire, they start the trial, and it's the next day when they're having a conference on the record about this issue. Judge Rodriguez said in four different times that he did not know. This is on page nine of our brief. That wasn't told to me. I wasn't told about it earlier. I was not told that you had not written all of your peremptories onto your list. That was never stated to me. I was not told about that. It did not come to my attention. I think that's where we get back to this idea, was it deliberating or writing? The court is saying that it wasn't told that they hadn't written the thing, but what's at issue is they needed more deliberative time also. The court did know they wanted more deliberative time. He's pretty clear here that he did not know what they were objecting to. But he says here, I thought what you needed was more time to deliberate. When he says that, he knows that what they need is more time to deliberate. They're changing their argument, though, to say we didn't have enough time to write it, which I think is a false argument. I think it's both. You have to deliberate and then write down. Well, Judge Rodriguez, who had been there the entire morning, who had listened to all of the questions, in his discretion, he felt that they had had enough time to deliberate. I think it's interesting when we're talking about the juror numbers and the procedure, to actually look at the sheet and to realize that under federal rule of criminal procedure 24C, alternate strikes can only be used on alternates. Alternate strikes can only be used on alternate. And when we get to Juror 14, he was the 10th juror. The court set a strike zone up to 44. And there was no possible way that 4, 10, or 14 were going to be alternates. No possible way. 14 was the 10th juror. So if they really had a problem with 4, 10, and 14, they should have been in number 1 and 10. They should not have been to the alternates. And it was nowhere in the briefing was it suggested that the way that the district court set the alternate jurors was error. We're not dealing with whether the district court abused its discretion in giving 10 minutes or not. That's not the question before us. That is not. But this court has been clear that district courts do have great discretion. Right. But that's not the issue. The issue is whether or not it was preserved that they didn't have an opportunity to fill out their form. And it's axiomatic that an objection should be timely and clear such that it obviates the need for appellate review. Assuming arguendo that this was a timely and clear objection, can you establish harmless error? Your Honor, there's the cases from this court show that there's no way to establish that Aguilar was harmed in any way. There was no harm done. This is not a constitutional right. This is a law, statute, rule-based right. Is this like regular harmless error analysis or is in which you would bear the burden in harmless error analysis the government has to show that the person's not harmed? Or is this some, when you just said it, you switched the burden. You said they can't show. Who bears the burden to show harmless error in this type of scenario? Well, that's an interesting question. And given that the wide ranges of cases that have shown that the defendant has the burden to show that there was error. Correct. And once you establish there was error, then the burden is on the government to show that it was harmless. And we're arguing here about whether there was even error or not. Yes, Your Honor. And Rule 24 certainly does not set a time limit. And that's where I think the discretion of the district court comes in. I'm not arguing for an abuse of discretion standard. But when we're looking at whether or not there was error, district court, who was there and heard the entire time? The government stated we had plenty of time to do this. And the record shows that when counsel was told by the district court, we need your sheet, we need your sheet, they were given more time. The time limit was expanded. But at a certain point, the judge said, this is it. These people have been here all day. It's lunchtime. It wasn't the judge saying. It was the clerk took up the sheets. Right. But when they had the status conference, he did say that he was concerned about the panel being there for that long and that they needed to be released. Let me ask you a question about the evidence in this case. Did the defendant testify on his behalf? Yes, he did, Your Honor. He did. And did he put on witnesses, any witnesses? What kind of evidence did he have? I'm asking, really, was the evidence close? Yes, Your Honor. Thank you. No, it was not. We had a signed confession, which was admitted into evidence as well as the defendant's testimony. We had the victim's testimony. This was not a close case by any means. In other words, the defendant conceded that he had done with what he was charged with? There was a legal issue whether or not he, the issue argued to the jury was that he, this was involved a ward, and whether or not he had the authority, whether it really was a relationship between a superior and a ward. In other words, but the act against the child was not in dispute. Correct. And it was an adult. This was at a detention facility where undocumented individuals were being held before deportation. Well, is that a legal question about whether he had the authority, or is that a jury question? Well, the jury, he worked, it wasn't, I think it was a fact question, because he worked in the kitchen. This wasn't a situation where he was an armed guard patrolling, but all the evidence showed, he admitted that he could tell these wards, these detainees, what to do. They had to do what he said. He could get them in trouble. We introduced into evidence as an exhibit the rule book that the defendant Aguilar had signed showing that he had this responsibility that he was not to have inappropriate conduct. These were not equals. So to the extent that that was the issue for the jury, it was That was the issue for the jury, whether in that capacity he had the authority over them as their wards. Yes, exactly. But there was never any doubt But not whether he had done the act. We had a written confession that he had performed oral sex on one of these detainees. The detainee was very much testified that he was victimized by this event and certainly felt that he did not have the opportunity to say no. Is this what you've been discussing with Judge Jolly? Is this what you would respond as to why the error was harmless if there was indeed error? Yes, Your Honor. I wanted to make sure I got an answer to the question of assuming you bear the burden, assuming that there's error how is the error harmless? The evidence was overwhelming as to guilt. Do you have anything else to offer on why the error was harmless? I think I would show that we have the written confession. We have the testimony. We also have, you know, sometimes the government does things right. We had him sign that he had read these rules, which showed that he had authority over these folks and could not engage in these types of acts. But I do think it's important to look at a few cases that are similar. Nothing is quite exactly like this out of this circuit, but we do have the Wilson case and the Thompson case and I would like to talk a little bit about those. In Thompson I mean, excuse me, Thomas, it was the defendant wasn't there during the preemptory strike process. He was not present. The court found that that was error and the record showed that if I had been there, if the defendant had been present, he would have struck a juror that wasn't struck. This did not amount to reversible error even though the panel would have been different. Even though there was error, it was not reversible error. Turning to Wilson there were actually two alleged errors there. One was that the number of preemptory strikes was improper. The defendant got 11, the U.S. got 7, but also that the selection of alternates was an error and the court said, yeah, that was error. They picked their alternates at random out of the 14 and said that was error, but they still found that that was not reversal. The key issue when we're talking about, and I am asserting here that it's his burden under plain error, you need an impartial jury and it's not enough to show there was error. You have to show prejudice that affected the outcome and in the instant case, again asserting plain error review, I just don't think that Aguilar can meet that standard. It is important to, again, emphasize that we're talking about 4, 10, and 14. Well, I noticed on one of those there was a suggestion that there was enough prejudice in that particular juror, alleged prejudice, that he could have been challenged for cause but was not. Any one of those jurors? Oh, of the three? That's not how I interpreted their argument. I just wonder why one of them wasn't challenged for cause. I certainly didn't see a slam dunk cause but that's not how I read their argument. But certainly really, 4, 10, and 14, only one of those was going to make it onto the list and I just don't think that that's enough, especially under Thomas. These were experienced defense attorneys, well-trained assistant federal public defenders. They had all morning to decide their peremptory strikes. It wasn't a 10-minute situation. And so for that reason, we would ask the court, yes ma'am? Where in your brief do you argue the harmless error point? The point you've made to us today that if there was error, it was harmless, where is that in your brief? Your Honor, I still believe that plain error review applies. Assuming plain error, but you have to have your alternative argument in your brief anywhere? The harmless argument is not, but certainly within our recitation of the facts, the facts I've highlighted are recited therein. And Your Honor, you know... I mean, because you have a footnote 3, even if the court decides on harmless error review, when applying harmless error, the court must still determine whether an error affects substantial rights. If there's no effect, the error must be disregarded. I mean, that's the sum total of harmless error in your brief, isn't it? Is that right? To the extent there's a heading with harmless error... There's no heading. No, I'm saying the sum total of harmless error is this footnote, right? But the factual summation, I think, shows the strength of the United States case. And I also think that the evidence was overwhelming. Defense counsel had sufficient time to write out those numbers. If they had time to write out, we needed more time, then they could have certainly written 4, 10, and 14, only one of which would have actually applied to the 12-member jury. And for those reasons... I have a question about this, because this happens with some frequency, that the government hangs its hat on plain error, and then something happens, and we come to argument, and it's not clear that the error is plain, and then we get into a situation where is harmless error even argued? Why isn't it just argued in the brief as the backstop for plain error, like every other litigant? Your Honor, I think that that would have been a better strategy, for sure. I certainly can invent a better strategy. In all candor to the Court, I wasn't the brief writer in this case. Can we even consider this argument as a backstop if it's not briefed? Yes, Your Honor. I think the Court can consider whatever it wishes to consider, and certainly when it's a factual determination. We're not talking about cases. We're not talking about case law. We're talking about facts. But you're actually arguing as to apply a standard to say that based upon that standard, you win, too. My argument is that plain error review applies. But when asked by the Court to enunciate the strength of our evidence, I'm certainly going to provide that. Okay, so should we just stop, then? If we were to find plain error didn't apply, then we just stop? No, Your Honor, but there's not automatic reversal. That's very clear in our brief. And if there's not automatic reversal, then simply finding error isn't enough. So I do think that there's sufficient evidence in this record to show that any error was harmless. We have a confession that's clearly enunciated in the factual recitation. And I do, you know, this is one of those interesting situations where the government is really arguing on behalf of the district court judge. And I think Judge Rodriguez did things, handled this vordire in a manner that gave the parties more than most federal judges give. Counsel even admitted it was more like a state vordire. And I think that he shouldn't be criticized for how this came down. Well, I'll show you that a state vordire, you get ten minutes for a soft tissue car wreck. So, go ahead. I ask that the conviction be affirmed. Anything? Judge, I'm sorry. Okay. I'm going to let that one go. And thank you very much for your argument. Now we'll hear from Ms. Madewell. Just briefly, if I may, buzzing counsel argues that the defense had sufficient time to exercise the preemptory strikes and cites to the Kemp case. In the Kemp case, the defendants got 95 minutes to exercise their preemptory strikes. Now there were three co-defendants, but the defense, the judge initially gave them 30 minutes and then extended it after that. Are you arguing abuse of discretion? I mean, is that your argument, that the court here abused its discretion? What is the error? The district court had to commit some error. The error is that the court failed to allow the defendant, or failed to give the defendant the opportunity to exercise all of its preemptory strikes. According to what the defendant said. I'm sorry? According to what the defendant said, he didn't have enough time. Yes. So your argument is that the court abused its discretion in not allowing him more time? Is that your argument? Well, as it was presented to the court, right there was that they weren't even allowed to fill in the sheet. And defense counsel actually said she approached the deputy as the deputy clerk was writing out the strike list. To make an argument here, I mean, as an aggrieved party, you need to say the district court erred. Yes. Now tell me how the district court itself erred. It committed reversible error in this case. The district court erred by failing to allow the defendant to complete the exercise of his full complement of preemptory strikes to which he was entitled. And that constituted an abuse of discretion because he does have discretion in this matter. That's, unfortunately, Judge, the point where I'm stumbling at because the number of preemptory strikes is actually set by rule. So Rule 24B says the defendant has a right to 10. Government has a right to 6. 24C says one additional if there are. You do have to concede, I suppose you do, that the district court can put a time limit on it. Yes, yes. And you're saying that he erred by putting too strict of a use of discretion. That's your argument. Yes. I concede that is a way that my argument could be viewed. And I would point out that the case that the government cites to, the defendants received 95 minutes there. I really think, and I could be wrong, but I really think that the issue here comes down to harm and how we determine harm in this case. I believe it's a preserved issue. The burden is on the government. It's an issue where we used to apply automatic reversal, and now the argument being made by the government is that it's always harmless unless you can show that there's a biased juror. Well, if you can show there's a biased juror, that's a separate ground for reversal of a conviction. So that suggests that there is no remedy for the violation of Rule 24B. They have made the argument that Judge Elrod is speaking on to suggest that a factor in determining harm would be how close the case was. Yes, and that could be a factor that the court looks at. And I agree with opposing counsel that the issue in this case had to do with authority. Our client did admit that he had committed the act. I dispute the government's representation that there was any issue regarding consent. The district court specifically said that consent was not an issue because it has to do with authority, sexual abuse of award. And there was a lot of disagreement in the back on whether this was consensual or not. But that wasn't an issue for the jury to decide. The issue for the jury to decide was whether he had the required authority so that it came within this statute. And the defendant did vigorously challenge that and put on evidence. What was the disputed issue of fact that related to the legal question of his authority? It had to do with what type of position he held at the South Texas Detention Center. But that was not disputed, though, was it? The range of the authority within that position was what was disputed. Whether that position gave him this type of—because the statute says custodial I'm trying to remember the three. It's custodial, disciplinary, or a third type of authority over the individual. My time is up.